UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH DAKOTA

NORTHERN DIVISION

_____

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 17-10017 |
| Plaintiff, | MEMORANDUM IN SUPPORT OF MOTION TO DISMISS INDICTMENT |
| vs. | |
| SAMANTHA FLUTE, | |
| Defendant. | |

_____

Samantha Flute is charged with involuntary manslaughter for the death of her newborn son based on her alleged prenatal ingestion of prescribed and over-the-counter medications in a grossly negligent manner. All of the alleged criminal acts took place while Ms. Flute was pregnant and before the child was born.

Prosecution of Ms. Flute for her conduct while pregnant is expressly barred by federal law. Further, the unborn child was not a "human being" within the meaning of the involuntary manslaughter statute at the time of the alleged criminal acts. In short, Ms. Flute's alleged conduct is not prohibited by federal law. Further, application of the involuntary manslaughter statute to Ms. Flute's prenatal conduct offends the Due Process Clause of the Fifth Amendment. The indictment must be dismissed.

## BACKGROUND

Ms. Flute gave birth to a baby boy on August 20, 2016. The baby died shortly after birth. Ms. Flute is charged with involuntary manslaughter for allegedly using prescription and over-

the-counter medications in a grossly negligent manner in the days before the baby's birth. The

indictment alleges:

> Between on or about August 19, 2016, and August 20, 2016, in Agency Village, in Indian country, in the District of South Dakota, Samantha Flute, an Indian, unlawfully killed a human being, Baby Boy Flute, without malice, in the commission of a lawful act in an unlawful manner which might produce death. Such act was committed in a grossly negligent manner, with actual knowledge that her conduct was, in a threat to the life of another and with actual knowledge that would reasonably enable her to foresee the peril to which her act subjected another, to wit: Samantha Flute did unlawfully kill Baby Boy Flute by ingesting prescribed and over-the-counter medicines in a grossly negligent manner, and did thereby commit the crime of involuntary manslaughter, in violation of 18 U.S.C. §§ 1153 and 1112.

Doc. 2. Ms. Flute is not alleged to have committed any part of the offense after the birth of the

baby boy.

## ARGUMENT

**I.      Prenatal misuse of prescription and over-the-counter medications is not subject to prosecution for involuntary manslaughter under 18 U.S.C. § 1112.**

Federal law prohibits the prosecution of Ms. Flute for her prenatal medication use. As a

matter of statutory interpretation, the indictment fails to state an offense. "Federal Rule of

Criminal Procedure 12(b) provides that a defendant may argue that the indictment fails to state

an offense." *United States v. Kowal*, 486 F.Supp.2d 923, 933 (N.D. Iowa 2007). "On a pretrial

motion to dismiss an indictment pursuant to Rule 12(b), the court must accept all factual

allegations in the Indictment as true." *Id.* (quoting *United States v. Sampson*, 371 U.S. 75, 78-79

(1962)). "To withstand a Motion to Dismiss, an Indictment must allege that the Defendant

performed acts which, if proven, would constitute a violation of the law for which he has been

charged." *United States v. Finn*, 919 F. Supp. 1305, 1339 (D. Minn. 1995) (citing *United States

v. Polychron*, 841 F.2d 833, 834 (8th Cir. 1988)). "As a result, if the acts, that have been alleged

in the Indictment, do not constitute a criminal offense, then the Indictment should be dismissed."

*Id.*

Here the acts alleged in the indictment are Ms. Flute's misuse of prescription and over-the-counter medications while she was pregnant with her son. These acts do not constitute a criminal offense.

### A. Unborn Victims of Violence Act of 2004 (18 U.S.C. § 1841) governs conduct that causes death or injury to a child who is in utero at the time the conduct takes place & expressly prohibits prosecution of the mother of an unborn child.

The Unborn Victims of Violence Act of 2004 expanded the scope of federal criminal law to cover certain conduct that "causes the death of, or bodily injury . . . to, a child, who is in utero at the time the conduct takes place." 18 U.S.C. § 1841(a)(1).[1] This statute specifically prohibits

---

[1] Section 1841 provides in whole:

(a)(1) Whoever engages in conduct that violates any of the provisions of law listed in subsection (b) and thereby causes the death of, or bodily injury (as defined in section 1365) to, a child, who is in utero at the time the conduct takes place, is guilty of a separate offense under this section.

(2)(A) Except as otherwise provided in this paragraph, the punishment for that separate offense is the same as the punishment provided under Federal law for that conduct had that injury or death occurred to the unborn child's mother.

(B) An offense under this section does not require proof that—

(i) the person engaging in the conduct had knowledge or should have had knowledge that the victim of the underlying offense was pregnant; or

(ii) the defendant intended to cause the death of, or bodily injury to, the unborn child.

(C) If the person engaging in the conduct thereby intentionally kills or attempts to kill the unborn child, that person shall instead of being punished under subparagraph (A), be punished as provided under sections 1111, 1112, and 1113 of this title for intentionally killing or attempting to kill a human being.

(D) Notwithstanding any other provision of law, the death penalty shall not be imposed for an offense under this section.

(b) The provisions referred to in subsection (a) are the following:

the prosecution "of any woman with respect to her unborn child." 18 U.S.C. § 1841(c)(3). Ms. Flute cannot be prosecuted for involuntary manslaughter of her own child based on acts she committed while pregnant. The indictment must be dismissed.

Section 1841 "recognizes unborn children as a class of victims not previously protected under federal law and criminalizes the killing or injuring of unborn children during the commission of certain federal offenses." *United States v. Montgomery*, 635 F.3d 1074, 1086 (8th Cir. 2011). Section 1841 covers involuntary manslaughter of a child where the child was "in utero at the time" of the alleged conduct. 18 U.S.C. § 1841(a)(1) & (b)(1) (listing 18 U.S.C. § 1112 as a covered offense).

---

(1) Sections 36, 37, 43, 111, 112, 113, 114, 115, 229, 242, 245, 247, 248, 351, 831, 844(d), (f), (h)(1), and (i), 924(j), 930, 1111, 1112, 1113, 1114, 1116, 1118, 1119, 1120, 1121, 1153(a), 1201(a), 1203, 1365(a), 1501, 1503, 1505, 1512, 1513, 1751, 1864, 1951, 1952 (a)(1)(B), (a) (2)(B), and (a)(3)(B), 1958, 1959, 1992, 2113, 2114, 2116, 2118, 2119, 2191, 2231, 2241(a), 2245, 2261, 2261A, 2280, 2281, 2332, 2332a, 2332b, 2340A, and 2441 of this title.

(2) Section 408(e) of the Controlled Substances Act of 1970 (21 U.S.C. 848(e)).

(3) Section 202 of the Atomic Energy Act of 1954 (42 U.S.C. 2283).

(c) Nothing in this section shall be construed to permit the prosecution—

(1) of any person for conduct relating to an abortion for which the consent of the pregnant woman, or a person authorized by law to act on her behalf, has been obtained or for which such consent is implied by law;

(2) of any person for any medical treatment of the pregnant woman or her unborn child; or

(3) of any woman with respect to her unborn child.

(d) As used in this section, the term "unborn child" means a child in utero, and the term "child in utero" or "child, who is in utero" means a member of the species homo sapiens, at any stage of development, who is carried in the womb.

18 U.S.C. § 1841.

It is clear from the text and very existence of § 1841 that the statute is the sole and exclusive statutory basis for prosecuting acts that took place while an unborn child was in utero. The rule of statutory construction that "the specific governs the general" is "a warning against applying a general provision when doing so would undermine limitations created by a more specific provision." *Vanity Corp. v. Howe*, 516 U.S. 489, 511 (1996). In other words, the more specific provisions of § 1841, which explicitly covers offenses like involuntary manslaughter of a child "who is in utero at the time the conduct takes place," govern over the more general provisions of the involuntary manslaughter statute, prohibiting the unlawful killing of a "human being" in 18 U.S.C. § 1112.

Ms. Flute's alleged conduct must fall under § 1841 or it is not a criminal offense. It does not. Section 1841 expressly prohibits the prosecution of the mother of the unborn child: "Nothing in this section shall be construed to permit the prosecution . . . of any woman with respect to her unborn child." 18 U.S.C. § 1841(c)(3). This section "exempts mothers from prosecution for causing harm to the unborn child . . . ." *United States v. Boie*, 70 M.J. 585 (A.F. Ct. Crim. App. 2011) (discussing similarly-worded Article 119a of the Uniform Code of Military Justice). The indictment against Ms. Flute must be dismissed.

**B.      Involuntary manslaughter is the unlawful killing of a "human being," a term that does not include an unborn child.**

Ms. Flute was charged with involuntary manslaughter in violation of 18 U.S.C. § 1112 based on her prenatal use of prescription and over-the-counter medication. Setting aside the fact that the more specific provisions of 18 U.S.C. § 1841 should bar prosecution under the more general provisions of § 1112, the text of § 1112 does not cover the alleged conduct in this case,

i.e., conduct that took place while the victim was in utero. Accordingly, the indictment fails to state an offense.

Involuntary manslaughter is "the unlawful killing of a *human being* without malice . . . [i]n the commission of an unlawful act not amounting to a felony, or in the commission in an unlawful manner, or without due caution and circumspection, of a lawful act which might produce death." 18 U.S.C. § 1112(a) (emphasis added). The term "human being" does not include unborn children. "Human being" is defined to include "every infant member of the species homo sapiens who is born alive at any stage of development." 1 U.S.C. § 8(a).[2] This definition also provides:

> Nothing in this section shall be construed to affirm, deny, expand, or contract any legal status or legal right applicable to any member of the species homo sapiens at any point prior to being 'born alive' as defined in this section.

1 U.S.C. § 8(c).

Here, Ms. Flute is alleged to have misused medications in the days before her son was born. She is not alleged to have committed any part of the offense after the baby was born. So while the baby was a "human being" at the time of his death, he was not a "human being" (as that term is defined in 1 U.S.C. § 8) at the time of Ms. Flute's alleged criminal acts. The latter was the critical point. It is clear from the text that the statute is not meant to apply to acts that took place before the child was born. *See* 1 U.S.C. § 8(c) (stating that definition of "human being" is not meant to confer legal status to fetus before being born alive); *see also Montgomery*, 635 F.3d at 1086 (recognizing that the Unborn Victims of Violence Act of 2004, codified at 18

---

[2] "Born alive" means: "with respect to a member of the species homo sapiens, . . . the complete expulsion or extraction from his or her mother of that member, at any stage of development, who after such expulsion or extraction breathes or has a beating heart, pulsation of the umbilical cord, or definite movement of voluntary muscles, regardless of whether the umbilical cord has been cut, and regardless of whether the expulsion or extraction occurs as a result of natural or induced labor, cesarean section, or induced abortion." 1 U.S.C. § 8(b).

U.S.C. § 1841, was adopted to protect a previously-unprotected class of victims).  Further, it is generally accepted that the victim's status at the time of the alleged criminal conduct is the critical point, not the victim's status at the time of his death. *See*, *e.g.*, *State v. Aiwohi*, 123 P.3d 1210, 1221 (Haw. 2005) (explaining that defendant's conduct must occur at a time when the victim is within the class contemplated by the legislature); *Reinesto v. Superior Ct. of Ariz.*, 894 P.2d 733, 736 (Ariz. Ct. App. 1995) (articulating "accepted principle" that criminal statutes focus on the conduct of the accused, not on the status of the alleged victim).

To the extent there is any ambiguity over whether the victim must have been a "human being" at the time of the alleged criminal acts or merely at the time of death, the rule of lenity requires interpreting the statute in favor of Ms. Flute. *See United States v. Santos*, 553 U.S. 507, 513 (2008) (plurality opinion). "This venerable rule not only vindicates the fundamental principle that no citizen should be held accountable for a violation of a statute whose commands are uncertain, or subjected to punishment that is not clearly prescribed." *Id.* "It also places the weight of inertia upon the party that can best induce Congress to speak more clearly and keeps courts from making criminal law in Congress's stead."

Ms. Flute did not commit any part of the alleged offense while the baby was within the class of "human beings" protected by the involuntary manslaughter statute. In other words, her conduct did not fall under § 1112, and the indictment fails to state an offense.

An overwhelming majority of jurisdictions have found that statutes prohibiting child abuse, manslaughter, and other offenses against children do not permit the prosecution of a mother for prenatal conduct causing harm to a subsequently born child.[3] *See, e.g.*, *State v. Louk*,

---

[3] Only two states have found that a fetus is a "child" for the purposes of prosecuting a mother based on her prenatal conduct. *See Ankrom v. State*, 152 So.3d 373 (Ala. 2011) (holding that viable fetus is "child" within the meaning of statute prohibiting chemical endangerment of a child); *Whitner v. State*, 492 S.E.2d 777 (S.C. 1997) (holding that viable fetus is a "child" within the meaning of child abuse and endangerment statute).

786 S.E.2d 219, 226-228 (W. Va. 2016) (holding that statute criminalizing child neglect resulting in death does not cover mother's prenatal acts) (listing cases); *People v. Jones*, 317 Mich. App. 416 (Mich. Ct. App. 2016) (holding that fetus is not "child" for purposes of first-degree child abuse statute); *Arms v. State*, 471 S.W.3d 637 (Ark. 2015) (holding that fetus is not a person under statute prohibiting the introduction of a controlled substance into the body of another person); *State v. Stegall*, 828 N.W.2d 526, 531-32 (N.D. 2013) (holding that endangerment of a child statute does not apply to acts committed by the mother while the child is in utero) (listing cases); *Kilmon v. State*, 905 A.2d 306, 307 (Md. 2006) (holding that intentional ingestion of cocaine by a pregnant woman cannot form the basis for conviction for reckless endangerment of a child); *State v. Aiwohi*, 123 P.3d 1210 (Haw. 2005) (holding that manslaughter statute does not cover mother's prenatal use of drugs); *Reinesto v. Superior Ct. of Ariz.*, 894 P.2d 733, 736 (Ariz. Ct. App. 1995) (holding that child abuse statute does not apply to mother's prenatal conduct that harms a fetus who later becomes a child). Indeed, this Court found that South Dakota's child abuse statute does not cover prenatal drug and alcohol use because an unborn child is not a "minor" within the meaning of the statute. *United States v. Marissa Sitting Dog*, No. 13-10039, Order Adopting Report and Recommendation (Doc. 47) (September 11, 2014), *adopting* Report and Recommendation on Motion to Dismiss Indictment (Doc. 40) (May 2, 2014). This Court should follow the overwhelming majority of jurisdictions in strictly construing 18 U.S.C. § 1112 and finding that it does not cover Ms. Flute's conduct before her child was born.

## II.   Applying the involuntary manslaughter statute to Ms. Flute's prenatal use of prescription and over-the-counter medications would violate the Due Process Clause.

The involuntary manslaughter statute is unconstitutionally vague as applied to Ms. Flute's alleged conduct in this case. Interpreting the statute to apply to Ms. Flute's prenatal use

of prescription and over-the-counter medications would open the door for prosecution of an endless list of prenatal activities that might harm an unborn child and ultimately cause the death of a later-born child, offending the due process requirements of fundamental fairness and fair notice.

"A statute is void for vagueness if it: (1) fails to provide a person of ordinary intelligence fair notice of what is prohibited, or (2) is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Frison*, 825 F.3d 437, 442 (8th Cir. 2016) (internal quotation omitted). "The prohibition of vagueness in criminal statutes is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law, and a statute that flouts it violates the first essential of due process." *Johnson v. United States*, 135 S. Ct. 2551, 2556–57 (2015) (internal quotation omitted).

Interpreting 18 U.S.C. § 1112 to reach Ms. Flute's alleged misuse of prescription and over-the-counter medication while pregnant would offend due process. Section 1112 refers to "human beings," a term that is defined to exclude unborn children. Ms. Flute could not reasonably have known at the time of her conduct that she could be prosecuted for involuntary manslaughter, particularly in light of 18 U.S.C. § 1841(c), which expressly prohibits the prosecution of a woman based on conduct with respect to her unborn child.

Further, the federal involuntary manslaughter statute covers the commission of an otherwise lawful act in an unlawful manner or without due caution and circumspection. If this language is construed to reach Ms. Flute's conduct, it could just as easily be construed to include a host of other potentially reckless or negligent conduct while pregnant:

> everything from becoming (or remaining) pregnant with knowledge that the child likely will have a genetic disorder that may cause serious disability or death, to the continued use of legal drugs that are contraindicated during pregnancy, to consuming alcoholic beverages to excess, to smoking, to not maintaining a proper

and sufficient diet, to avoiding proper and available prenatal medical care, to failing to wear a seat belt while driving, to violating other traffic laws in ways that create a substantial risk of producing or exacerbating personal injury to her child, to exercising too much or too little, indeed to engaging in virtually any injury-prone activity that, should an injury occur, might reasonably be expected to endanger the life or safety of the child.

*Kilmon*, 905 A.2d at 311; *see also Reinesto*, 894 P.2d at 736-37 (listing other types of prenatal conduct that may harm a fetus and cause physical or mental abnormalities in a newborn). If the prosecution of Ms. Flute is allowed to proceed, "there would seem to be no clear basis for categorically excluding any of those activities from the ambit of the statute" and "criminal liability would depend almost entirely on how aggressive, inventive, and persuasive any particular prosecutor might be." *Kilmon*, 905 A.2d at 311-12. This is exactly what the due process clause is designed to prevent.

## CONCLUSION

Federal law expressly bars prosecution of a mother for her conduct while pregnant. Nevertheless, Ms. Flute is charged with involuntary manslaughter based on her alleged use of medications in the final days of her pregnancy. Not only is this prosecution expressly barred by 18 U.S.C. § 1841(c), but it also falls outside the scope of 18 U.S.C. § 1112 because the unborn child was not a "human being" at the time of the alleged criminal conduct. Finally, applying the involuntary manslaughter statute to Ms. Flute's prenatal conduct offends the due process clause. The indictment must be dismissed.

Dated this 2nd day of June, 2017.

Respectfully submitted,

NEIL FULTON
Federal Public Defender
By:

*/s/ Edward G. Albright*
_____
Edward G. Albright, Assistant Federal Public Defender
Attorney for Defendant
Office of the Federal Public Defender
Districts of South Dakota and North Dakota
101 South Pierre Street, Third Floor
P.O. Box 1258
Pierre, SD 57501
Telephone: 605-224-0009 Facsimile: 605-224-0010
Filinguser_SDND@fd.org