UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR17-10017-CBK |
| Plaintiff, | |
| vs. | RESPONSE IN OPPOSITION TO MOTION TO DISMISS INDICTMENT |
| SAMANTHA FLUTE, | |
| Defendant. | |

The United States of America, by and through Assistant United States Attorney Jeremy R. Jehangiri, submits this response in opposition to Defendant Samantha Flute's motion to dismiss indictment (Docket 24). Defendant's motion must be denied because (1) the plain language of 18 U.S.C. § 1841(c)(3) is inapplicable to Defendant, as the child-victim was born alive and was a human being at the time of his death, and (2) the indictment and statute provides adequate notice of the proscribed, unlawful conduct.

### I. BACKGROUND

#### A. Procedural History

On March 15, 2017, Defendant was charged in a one-count indictment for Involuntary Manslaughter. The indictment sets forth the following allegations:

> Between on or about the 19th day of August, 2016, and the 20th day of August, 2016, in Agency Village, in Indian country, in the District of South Dakota, Samantha Flute, an Indian, unlawfully killed a human being, Baby Boy Flute, without malice, in the commission of a lawful act in an unlawful manner which might produce death. Such act was committed in a grossly negligent manner, with actual knowledge that her conduct was

a threat to the life of another and with actual knowledge that would reasonably enable her to foresee the peril to which her act subjected another, to wit: Samantha Flute did unlawfully kill Baby Boy Flute by ingesting prescribed and over-the-counter medicines in a grossly negligent manner, and did thereby commit the crime of involuntary manslaughter, in violation of 18 U.S.C. §§ 1153 and 1112.

(Docket 1.) By order of the Court, Defendant was released pending trial on March 21. (Docket 16.) Defendant filed a motion to dismiss the indictment on June 2, 2017. (Docket 24.)

### B. Underlying Facts

On or about August 19, 2016, Defendant arrived at Coteau des Prairies Hospital in Sisseton, South Dakota. Defendant was in full term labor, and she gave birth to a fully developed male infant. At the time of admission, Defendant tested positive for a number of prescription and over-the-counter medications. Defendant also tested positive for a controlled substance, cocaine. The victim, Baby Boy Flute, died approximately four hours after his birth, although he was gestational for 38 weeks, well developed, normal, and intact when born, with no signs of obvious injury or trauma.

Forensic Pathologist Kenneth Snell performed an autopsy of Baby Boy Flute on August 22, 2016. Dr. Snell noted no anatomic cause of death. However, a number of medications and substances not medically administered during his life were detected in Baby Boy Flute. Dr. Snell concluded that the cause of death was attributed to a combined drug toxicity of several substances, none of which were medically prescribed nor lawfully administered to Baby Boy Flute.

During ongoing resuscitation efforts on Baby Boy Flute, Defendant admitted to medical staff to taking three Lorezepam before presenting at the

emergency room. Defendant obtained a Lorezepam prescription during her only prenatal visit, which was within the same week of giving birth. Defendant also admitted to recently taking a few lines of hydrocodone, making reference to snorting the controlled substance.

During interviews with law enforcement personnel, Defendant admitted to taking three-times the daily dose of her prescribed medications, to ingesting cough medicine, and to snorting a substance that she thought was hydrocodone, but she experienced a rush rather than a calming feeling. Defendant surmised that the hydrocodone was laced with cocaine. Defendant affirmed her concern about over-medicating while pregnant and that she did so against the interests of the victim. She admitted to being a drug addict, needing to get high. Defendant felt that the pregnancy was normal, that nothing was wrong, and that the baby was active throughout the pregnancy, although Defendant attended only one prenatal appointment during the pregnancy, which was at full-term and about one week before going into labor. As previously noted, Defendant acquired the medications that she later abused as a result of this one prenatal appointment.

## II. AUTHORITIES & ARGUMENT

### A. Plain Reading of Statute Allows Prosecution of Defendant

When considering a defendant's argument for dismissal pursuant to Rule 12, the court must accept all of the government's allegations in the charging document as true. *See, e.g., United States v. Sampson,* 371 U.S. 75, 78–79 (1962) ("Of course, none of these charges have been established by evidence, but at this

stage of the proceedings the indictment must be tested by its sufficiency to charge an offense."). The court must also "make all factual inferences in favor of the government[.]" *United States. v. Birbragher,* 576 F.Supp.2d 1000, 1005 (N.D. Iowa 2008) (quoting *United States v. Jeronimo–Bautista,* 425 F.3d 1266, 1267 (10th Cir. 2005)).

Title 18, Section 1841(a) criminalizes conduct that causes death or bodily injury to unborn children. Subsection (c), however, carves out an exception, prohibiting the prosecution "of any woman with respect to her unborn child." 18 U.S.C. § 1841(c)(3) (2004).

In this case, Defendant is charged with the homicide of her *living* baby. Baby Boy flute was *born alive,* and he lived for several hours before his mother, the defendant in this case, elected to cease ventilation and other efforts to keep Baby Boy Flute alive. Defendant's conduct was the proximate and exclusive cause of Baby Boy Flute's death. Under these circumstances, Section 1841 is entirely inapplicable. The plain reading of the statute precludes the use of the exception Defendant seeks to invoke in her motion to dismiss.

The indictment charges, among other allegations, that Defendant acted "with actual knowledge that her conduct was a threat to the life of another and with actual knowledge that would reasonably enable her to foresee the peril to which her act subjected" Baby Boy Flute. (Docket 1.) These allegations, accepted as true, support the prosecution of Defendant for involuntary manslaughter, as the foreseeability of her conduct of essentially poisoning Baby Boy Flute was the direct cause of his demise.

In *United States v. Spencer*, the court held that the death of an infant, who was born alive, from injuries inflicted in utero constitutes a homicide for purposes of federal prosecution. 839 F.2d 1341, 1343-44 (9th Cir. 1988). The fetus in *Spencer* sustained pre-birth injuries, and those injuries were the direct and exclusive cause of the baby's death after birth. There, the baby lived a matter of minutes, but that victim was nonetheless considered a "human being" for purposes of federal prosecution for homicide. *Id.* The court concluded that the federal statute and use of "human being" reflected Congress's intent. *Id.* at 1343. *See also, State v. Courchesne*, 998 A.2d 1, 57 (Conn. 2010) (concluding that "an infant who is born alive and who subsequently dies of injuries that he or she had sustained in utero is a 'person' within the meaning" the state's statutes); *People v. Hall,* 158 A.D.2d 69 (N.Y.App.Div. 1990) (finding living infant was a "person" for purposes of homicide prosecution and conviction); *Williams v. State,* 561 A.2d 216 (Md. 1989) (upholding manslaughter conviction for death of child seventeen after birth). *See generally, United States v. Montgomery*, 635 F.3d 1074 (8th Cir. 2011) (discussing the temporal and causal connection between death and conduct and that those connections need not occur in a particular sequence). The plan language of the statute, and the case law supporting this prosecution, foreclose Defendant's motion to dismiss. As such, the Court must deny the motion.

### B. Statute Proscribes Defendant's Conduct and Adequately Informs Defendant and the Public

"The Fifth Amendment guarantees every citizen the right to due process. Stemming from this guarantee is the concept that vague statutes are void." *United States v. Washam,* 312 F.3d 926, 929 (8th Cir.2002) (citing *Connally v. Gen. Constr. Co.,* 269 U.S. 385, 391 (1926)). "An overly vague statute 'violates the first essential of due process of law,' because citizens 'must necessarily guess at its meaning and differ as to its application.'" *United States v. Bamberg,* 478 F.3d 934, 937 (8th Cir.2007) (quoting *Connally,* 269 U.S. at 391). "A statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." *Washam,* 312 F.3d at 929 (internal citations omitted). "'Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed.'" *Id.* (quoting *United States v. Nat'l Dairy Prods. Corp.,* 372 U.S. 29, 32–33 (1963)). "There is a two-part test to determine whether a statute is void for vagueness. The statute, first, must provide adequate notice of the proscribed conduct, and second, not lend itself to arbitrary enforcement." *Bamberg,* 478 F.3d at 937 (citing *Kolender v. Lawson,* 461 U.S. 352, 357 (1983)); *see also Washam,* 312 F.3d at 929 (8th Cir.2002) (similar).

The same reasons articulated above defeat Defendant's other contentions. Baby Boy Flute was a "human being" as contemplated in the federal homicide statutes, whether murder or manslaughter, and the indictment was the result of Defendant's conduct that directly resulted in the infant's death. Courts in other

jurisdictions have consistently concluded that the death of an infant, who is born alive, from injuries inflicted in utero constitutes homicide. *See, e.g., Spencer,* 839 F.2d at 1343–44 (affirming conviction for death of infant ten minutes after birth was killing of "human being"); *Cuellar v. State,* 957 S.W.2d 134 (Tex.App.1997) (same); *Jones v. Commonwealth,* 830 S.W.2d 877, 880 (Ky.1992) (same); *Ranger v. State,* 290 S.E.2d 63 (1982) (sustaining conviction stemming from death of child, twelve hours after birth, caused by shooting of mother); *People v. Bolar,* 440 N.E.2d 639 (1982) (upholding prosecution involving newborn surviving only long enough to exhibit a few heartbeats "individual" within meaning of manslaughter and reckless homicide statutes); *Williams,* 561 A.2d 216 (1989) (same); *State v. Anderson,* 343 A.2d 505 (1975) (same). The indictment, furthermore, accurately stated the elements of the statute with sufficient clarity to apprise Defendant of what to defendant against.

> Longstanding Eighth Circuit precedent provides that:
>
> The sufficiency of an indictment should be judged by practical, and not by technical, considerations. It is nothing but the formal charge upon which an accused is brought to trial. An indictment which fairly informs the accused of the charge which he is required to meet and which is sufficiently specific to avoid the danger of his again being prosecuted for the same offense should be held good.

*Hewitt v. United States,* 110 F.2d 1, 6 (8th Cir. 1940). "An indictment is legally sufficient on its face if it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution." *United States v.*

*Fleming*, 8 F.3d 1264, 1265 (8th Cir. 1993). "An indictment will ordinarily be held sufficient unless it is so defective that it cannot be said, by any reasonable construction, to charge the offense for which the defendant was convicted." *United States v. Wessels*, 12 F.3d 746, 750 (8th Cir. 1993).

The indictment in this case, by any reasonable construction, complies with the mandate of Federal Rule of Criminal Procedure 7(c)(1) in that it contains a plain, concise, and definite written statement of the essential facts constituting the crime charged by the Grand Jury. The indictment is neither vague nor indefinite.

Moreover, Defendant's pre-indictment statements illuminate the charge she now faces, the knowledge she possessed at that time, and the foreseeability of her conduct. Specifically, during ongoing resuscitation efforts on Baby Boy Flute, Defendant admitted to ingesting a prescription drug at three times the prescribed amount before presenting at the emergency room and to snorting a few lines of hydrocodone. Defendant obtained prescriptions during her only prenatal visit, which was within the same week of giving birth. Most importantly, Defendant affirmed her concern about over-medicating while pregnant and that she did so against the interests of the victim. She admitted to being a drug addict, needing to get high, and to using other controlled substances. Defendant has a history with illegal substance abuse and has given birth to other children. As such, Defendant was fully aware of the dangers presented to herself, others, and Baby Boy Flute by her non-prescribed and unlawful use of controlled substances and medications, thereby leading to the poisoning of the infant.

These facts are generally alleged in the indictment and such general allegations satisfy the elements of the involuntary manslaughter statute under which Defendant is charged. For these reasons, Defendant's motions fails.

### III. CONCLUSION

Any reference to Section 1841 is misguided and inapplicable. Defendant is not being prosecuted under that statute, and the conduct supporting the charge involves Baby Boy Flute, who was a living, breathing human being. The plain language of § 1841 forecloses Defendant's arguments. In addition, the criminal statute under which Defendant is charged proscribes the conduct underlying this case. The indictment adequately informs Defendant, and her conduct and statements demonstrate her knowledge about her prospective criminal culpability. Accordingly, Defendant's motion to dismiss must be denied.

Dated and electronically filed this 12th day of June, 2017.

RANDOLPH J. SEILER
United States Attorney

*/s/ Jeremy Jehangiri*
_____
JEREMY R. JEHANGIRI
Assistant United States Attorney
P. O. Box 2638
Sioux Falls, SD 57101-2638
Telephone: (605)357-2353
Facsimile: (605)330-4410
E-Mail: Jeremy.Jehangiri@usdoj.gov