UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH DAKOTA

NORTHERN DIVISION

_____

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 17-10017 |
| Plaintiff, | REPLY IN SUPPORT OF MOTION TO DISMISS INDICTMENT |
| vs. | |
| SAMANTHA FLUTE, | |
| Defendant. | |

_____

Comes now Defendant Samantha Flute, by and through her attorney, Assistant Federal Public Defender Edward G. Albright, respectfully submits this Reply in Support of Motion to Dismiss Indictment to the Government's Response (DCD 26) to Defendant Flute's Motion to Dismiss Indictment (DCD 24).

Federal statutory and constitutional law bar the prosecution of Ms. Flute for involuntary manslaughter for misusing prescription and over-the-counter medications in the final days of her pregnancy. The government's reliance on common law rules allowing the prosecution of a third party who causes harm to an unborn child (who later suffers injury or death after birth) in the course of an attack on a pregnant woman does not permit the prosecution in this case. The indictment must be dismissed.

> **1. Section 1841 applies to conduct that causes death or injury to a child "who is in utero at the time the conduct takes place." It also bars the prosecution of a mother for any such conduct with respect to her unborn child.**

Section 1841 applies to conduct committed at the time a child is in utero: "Whoever engages in conduct that violates any of the provisions of law listed in subsection (b) and thereby causes the death of, or bodily injury . . . to, a child, *who is in utero at the time the conduct takes place* is guilty of a separate offense under this section." 18 U.S.C. § 1841(a)(1) (emphasis added). This provision also prohibits the prosecution of any woman "with respect to her unborn child." 18 U.S.C. § 1841(c)(3). It bars the prosecution of Ms. Flute.

The statute could not be clearer. It covers conduct that takes place while the victim is in utero. The government ignores this language and asserts that the section does not apply because Ms. Flute's son was born alive and later died. This does not matter. Section 1841 explicitly defines the relevant point as "the time the conduct take place," not the victim's status at the time of death. A child who was in utero at the time of the criminal conduct and later was born alive and suffered injuries or death as a result of the earlier conduct still falls under § 1841. Read as a whole, § 1841 prohibits the prosecution of any woman for her conduct with respect to her unborn child so long as the child was still in utero at the time the conduct took place.

Section 1841 also forecloses prosecution under the involuntary manslaughter statute (18 U.S.C. § 1112) for three reasons. First, § 1841 specifically covers involuntary manslaughter based on conduct that takes place while the child is in utero while § 1112 covers involuntary manslaughter of a "human being" in general. When interpreting a statute, the specific governs the general. *See Vanity Corp. v. Howe*, 516 U.S. 489, 511 (1996). Second, § 1841 was adopted to recognize a class of victims "not previously protected under federal law." *United States v. Montgomery*, 635 F.3d 1074, 1086 (8th Cir. 2011). In other words, unborn children who were in utero at the time of the alleged criminal conduct were not previously protected under the

preexisting involuntary manslaughter statute. And third, allowing prosecution under § 1112 would lead to the absurd result of criminalizing the prenatal use of medications when it results in the death of a live child while not criminalizing the same conduct if the child dies in utero. *See State v. Louk*, 786 S.E.2d 219, 226 (W. Va. 2016). A statute should be interpreted to avoid an absurd result. *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982).

> **2.  The government provides no authority for charging a mother with involuntary manslaughter (or any other offense) based on her conduct while pregnant. Because *United States v. Spencer* involved a third party's conduct and predated the federal statutory definition of "human being," the government's reliance on this and other similar cases is inapposite.**

The government cites *United States v. Spencer*, 839 F.2d 1341 (9th Cir. 1988) and several state cases applying the common law "born alive" rule to allow the prosecution of a third party for causing injuries to an unborn baby who later died after birth. These cases do not justify the prosecution of Ms. Flute.

*Spencer* predates the federal statutory definition of "human being." "Human being" was not defined by statute until 2002. *See Montgomery*, 635 F.3d at 1086. That year, Congress enacted 1 U.S.C. § 8, which defines "human being" as "every infant member of the species homo sapiens who is born alive at any stage of development." 1 U.S.C. § 8(a). Section 8 also suggests that the child's status is determined at the time of the acts or conduct at issue in the governing statute. 1 U.S.C. § 8(c) ("Nothing in this section shall be construed to affirm, deny, expand, or contract any legal status or legal right applicable to any member of the species homo sapiens at any point prior to being 'born alive' as defined in this section."). *Spencer* applied the common law to interpret "human being," a phrase that has now been defined by statute. It does not control the interpretation of any of the statutes at issue now.

*Spencer* does not apply for a second reason: it addresses the conduct of a third party, not a pregnant woman. 839 F.2d at 1342 (defendant assaulted a pregnant woman and caused injuries to the fetus). The same is true for all of the other cases in the government's brief.[1] The government has not cited a single federal case supporting the prosecution of a woman for her conduct while pregnant even where the baby was born alive and became a "human being" within the meaning of federal law.[2] The reason for that is readily apparent: 18 U.S.C. § 1841(c)(3) bars such prosecutions.

---

[1] These cases all applied common law principles to determine whether an unborn child qualified as a victim under the relevant state statute. They do not inform the analysis here, where (1) the government is charging Ms. Flute—as opposed to a third party—based on her prenatal conduct with respect to her own child, and (2) the relevant terms are defined by statute and not left to the common law. *See State v. Courchesne*, 998 A.2d 1 (Conn. 2010) (applying common law "born alive" rule to find that victim was a "person" and defendant could be prosecuted for murder where baby was born and died after defendant stabbed a pregnant woman); *Cuellar v. State*, 957 S.W.2d 134 (Tex. Ct. App. 1997) (applying common law to find that third-party defendant could be convicted under intoxication manslaughter statute where unborn child was injured in an automobile accident and later born alive and died); *Jones v. Commonwealth*, 830 S.W.2d 877 (Ky. 1992) (finding that defendant could be convicted of second-degree manslaughter where his vehicle collided with the vehicle of a pregnant woman and her baby died after birth because the baby was "another person" at the time of its death under common law principles); *People v. Hall*, 158 A.D.2d 69 (N.Y. App. Div. 1990) (finding that defendant could be convicted of manslaughter of baby where he shot a pregnant woman in the abdomen and the baby was alive at the time of her death); *Williams v. State*, 561 A.2d 216 (Md. 1989) (finding that under the common law, the crime of manslaughter may be committed when an infant, born alive, dies shortly thereafter as a result of injuries inflicted upon the infant's pregnant mother by a third party); *Ranger v. State*, 290 S.E.2d 63 (Ga. 1982) (applying common law to find that defendant could be convicted of malice murder where he shot a pregnant woman and the baby died shortly after birth); *People v. Bolar*, 440 N.E.2d 639 (Ill. App. Ct. 1982) (applying common law "born alive" rule and finding that third-party defendant could be convicted of reckless homicide based on the death of a child born after a traffic accident); *State v. Anderson*, 343 A.2d 505 (N.J. Super. Ct. Law Div. 1975) (applying common law to determine whether defendant could be prosecuted for murder of twin infants based on his conduct of shooting a pregnant woman).

[2] *United States v. Montgomery* does not support the involuntary manslaughter prosecution in the present case. Montgomery was charged with kidnapping resulting in death in violation of 18 U.S.C. § 1201(a). 635 F.3d at 1074. She fatally strangled a pregnant woman, cut the fetus from

Many jurisdictions allow third parties to be prosecuted for harming a pregnant woman and causing death or injury to a later-born child. But the overwhelming majority of courts have held that a mother herself cannot be prosecuted under generally-applicable child abuse, homicide, or assault statutes for prenatal conduct causing harm or death to a subsequently born child. *See* Memorandum in Support of Motion to Dismiss Indictment, Docket 25, pp. 7-8. This line of cases should inform the ruling here.

### 3. Nothing about the indictment, the common law, or the underlying facts alleviate the vagueness of the statute as applied to Ms. Flute's case.

The involuntary manslaughter statute is void for vagueness as applied to Ms. Flute's prenatal medication use. No person of ordinary intelligence would know that a woman's conduct while pregnant can give rise to a prosecution with respect to her later-born child. And applying the statute to the facts of this case would authorize seriously discriminatory enforcement.

The government argues that the indictment is sufficient to apprise Ms. Flute of what to defend against. But the point is that *the statute* is void for vagueness as applied to a woman's prenatal medication use. Nothing about § 1112 or any other provision of federal law provides fair notice that it applies to a woman's prenatal conduct with respect to her own child. (Indeed, the existence of § 1841(c) suggests the opposite.) Neither does the line of cases authorizing the prosecution of a *third party* who committed an offense against a pregnant woman and caused the

---

the woman's body, and kidnapped the newly-born baby. *Id.* at 1079-80. The Eighth Circuit found that § 1201(a) applied even though the mother died before the kidnapping was completed because the statute only required that the death of any person resulted *in the course of* the kidnapping. *Id.* at 1087. *Montgomery* is factually and legally different from the present case. It does not allow the prosecution of a pregnant woman for her conduct with respect to her unborn child (even if the child is later born alive).

*United States v. Samantha Flute*
CR 17-10017
Reply in Support of Motion to Dismiss Indictment
June 16, 2017
Page 5

death of a later-born baby. And whether Ms. Flute knew that her prenatal medication use potentially was dangerous to her then-unborn child is also irrelevant. The question is whether it was clear that this conduct could give rise to criminal liability under § 1112. Given the unique position of a pregnant woman with respect to her unborn child, it was not.

Finally, the government recites a number of underlying facts that are not alleged in the indictment. These facts are irrelevant to the motion to dismiss. *United States v. Finn*, 919 F. Supp. 1305, 1339 (D. Minn. 1995) (stating that the facts *alleged in the indictment* must state a criminal offense). But it is worth noting that the government's repeated emphasis on allegations like Ms. Flute's lack of prenatal care illustrates the due process concerns in this case. *See* Response in Opposition to Motion to Dismiss Indictment, Docket 26, p. 3 (three references to Ms. Flute's single prenatal appointment), p. 8 (referencing Ms. Flute's only prenatal visit). If the prosecution of Ms. Flute is allowed to proceed—even in part—based on her lack of prenatal care, there truly is no way for an average person to ascertain the limit on which prenatal activities give rise to prosecution under 18 U.S.C. § 1112. This violates the due process clause. Allowing the government to define a crime "according to the health or condition of the newborn child would subject many mothers to criminal liability for engaging in all sorts of legal or illegal activities during pregnancy. We cannot, consistent with the dictates of due process, read the statute that broadly." *See Reinesto v. Superior Ct. of Ariz.*, 894 P.2d 733, 737 (Ariz. Ct. App. 1995). The indictment must be dismissed.

Dated this 16th day of June, 2017.

Respectfully submitted,

NEIL FULTON
Federal Public Defender
By:

*/s/ Edward G. Albright*
_____
Edward G. Albright, Assistant Federal Public Defender
Attorney for Defendant
Office of the Federal Public Defender
Districts of South Dakota and North Dakota
101 South Pierre Street, Third Floor
P.O. Box 1258
Pierre, SD 57501
Telephone: 605-224-0009 Facsimile: 605-224-0010
Filinguser_SDND@fd.org

*United States v. Samantha Flute*
CR 17-10017
Reply in Support of Motion to Dismiss Indictment
June 16, 2017
Page 7