UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

FILED
NOV 14 2017


| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>SAMANTHA FLUTE,<br><br>Defendant. | 1:17-CR-10017-CBK<br><br>OPINION AND ORDER |

Defendant is charged with involuntary manslaughter in violation of 18 U.S.C. § 1112 in connection with the death of her child who is alleged to have suffered injuries *in utero* which resulted in the child's death shortly after birth. She has moved to dismiss the indictment pursuant to Fed. R. Crim. P. 12(b)(3)(B)(v) on the basis that the indictment fails to state an offense.

An indictment is subject to attack if it fails to contain "a plain, concise, and definite written statement of the essential facts constituting the offense charge." Fed. R. Crim. P. 7(c)(1). "In order to be valid, an indictment must allege that the defendant performed acts which, if proven, constituted a violation of the law that he or she is charged with violating." United States v. Hedaithy, 392 F.3d 580, 589 (3rd Cir. 2004) (*quoting* United States v. Zauber, 857 F.2d 137, 144 (3d Cir.1988) (*quoting* United States v. Gimbel, 830 F.2d 621, 624 (7th Cir.1987))).

The crime of involuntary manslaughter is the "unlawful killing of a human being" in "the commission of an unlawful act not amounting to a felony, or in the commission in an unlawful manner, or without due caution and circumspection, of a lawful act which might produce death." 18 U.S.C. § 1112. The indictment alleges that defendant violated the statute in the commission of a lawful act – "by ingesting prescribed and over-the-counter medicines"- which resulted in the death of "Baby Boy Flute."

The first issue to be addressed is whether conduct toward a baby *in utero* is actionable as a federal criminal offense. In other words, the Court must determine whether Baby Boy Flute is within the class of victims Congress intended to protect under 18 U.S.C. § 1112.

There are no federal common law crimes - this court has jurisdiction only for crimes enacted by Congress. United States v. Hudson, 7 Cranch 32, 3 L.Ed. 259 (1812); In re Winship, 397 U.S. 358, 380 n. 9, 90 S.Ct. 1068, 1081 n. 9, 25 L.Ed.2d 368 (1970); James v. United States, 366 U.S. 213, 225, 81 S.Ct. 1052, 1058, 6 L.Ed.2d 246 (1961); Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 181, 114 S.Ct. 1439, 1450, 128 L.Ed.2d 119 (1994). Nonetheless, "where a federal criminal statute uses a common-law term of established meaning without otherwise defining it, the general practice is to give that term its common-law meaning." United States v. Harlan, 815 F.3d 1100, 1106 (8th Cir. 2016) (*quoting* United States v. Turley, 352 U.S. 407, 411, 77 S.Ct. 397, 1 L.Ed.2d 430 (1957)).

The term "human being" in the federal murder and manslaughter statutes is one such term that has been the subject of quests to determine its meaning. Historically, because of the lack of sophisticated medical knowledge, the common law recognized the so-called "born alive" rule, which allowed the prosecution of one who killed an unborn child only if the child was born alive after the assault and later died of the fetal injuries. *See* Clarke Forsythe, Homicide of the Unborn Child: The Born Alive Rule and Other Legal Anachronisms, 21 Val. U. L. Rev. 563 (1987).

The United States Court of Appeals for the Ninth Circuit observed that when the federal murder statute, 18 U.S.C. § 1111, was enacted in 1908 as part of the Major Crimes Act, "it was well-established in common law that murder was the killing of one human being by another, and that an infant born alive that later died as a result of fetal injuries was a human being." United States v. Spencer, 839 F.2d 1341, 1343 (9th Cir. 1988). The Fourth Circuit held in United States v. Jumper, 3 Fed. Appx. 141 (4th Cir. 2001), that a woman who attempted a home birth could be convicted of involuntary manslaughter based upon evidence that the baby was born alive and stopped breathing shortly after birth because the jury could reasonably have concluded that "attempting a home birth without any assistance, and foregoing medical care even after the baby ceased breathing," amounted to acting "without due caution and circumspection," as defined by 18 U.S.C. § 1112(a).

As set forth above, the federal criminal murder and manslaughter statutes have been applied to protect babies *in utero* who are born alive. Baby Boy Flute is within the class of victims Congress historically intended to protect under 18 U.S.C. § 1112.

In 2002, Congress enacted the Born-Alive Infants Protection Act, Pub. L. 107-207, § 2(a). Pursuant to that Act, in "determining the meaning of any Act of Congress," the term "human being" includes "every infant member of the species homo sapiens who is born alive at any stage of development." 1 U.S.C. § 8(a). The Act was intended to provide certain protections to infants born in connection with partial birth abortions. *See* H.R.Rep. No. 107–186, at 3, 2002 U.S.C.C.A.N. 620, 621-22 (2001). "The statute recognizes unborn children as a class of victims not previously protected under federal law and criminalizes the killing or injuring of unborn children during the commission of certain federal offenses." United States v. Montgomery, 635 F.3d 1074, 1086 (8th Cir. 2011).

It appears that Congress, in its political attempts to legislate away the rights recognized by the United States Supreme Court in Roe v. Wade, 410 U.S. 112, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) and Planned Parenthood of Southeastern Pennsylvania v. Casey, 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992) and their progeny, have replaced the common law "born alive" rule as it applies to the federal criminal statutes and expanded the class of victims protected under the federal criminal law. Even if conduct toward a baby *in utero* is actionable as the federal criminal offense of involuntary manslaughter, the indictment in this case is subject to dismissal if this defendant is not within the class of defendants Congress intended to punish.

In 2004, Congress enacted the Unborn Victims of Violence Act, also known as Laci and Conner's Law, Pub. L. 108-212. The Act provides that whoever engages in conduct that violates any of over 60 other federal criminal acts "and thereby causes the death of, or bodily injury . . . to, a child, who is in utero at the time the conduct takes place, is guilty of a separate offense under this section." 18 U.S.C. § 1841(a)(1). The Act "recognizes unborn children as a class of victims not previously protected under federal law." United States v. Montgomery, 635 F.3d 1074, 1086 (8th Cir. 2011). Involuntary manslaughter under § 1112 is specifically listed as one such federal offense for which an unborn child could not previously be considered a victim. 18 U.S.C. § 1841(b)(1).

The legislative history of the 2004 Act indicates that the House Judiciary Committee urged the passage of the Act because "there remains a gaping hole in federal law which would allow an unborn child to be killed or injured during the commission of a violent federal crime without any legal consequence whatsoever . . . The Unborn Victims of Violence Act was designed to address this current inadequacy in federal law." Testimony of Representative Steve

3

Chabot, July 8, 2003, 2003 WL 21526342. The Act was intended to abolish the common law born alive rule at the federal level, H.R. REP. 108-420, 6, 2004 U.S.C.C.A.N. 533, 536.

It is clear that § 1841 was intended to confer federal criminal jurisdiction over conduct towards victims *in* utero who are not thereafter born alive, thus extending the protections of the current federal criminal law to another class of victims. Although § 1841(a)(1) creates a separate offense for certain acts resulting in injury or death to an unborn child, the punishment for a crime against an unborn child is tied to the punishment for the underlying offense conduct. Thus, if a defendant commits manslaughter against an unborn child, the defendant's punishment would be the punishment set forth in 18 U.S.C. § 1112. The 2004 Act "does not extend Congress's reach to prohibit any conduct that does not currently violate Federal law." H.R. REP. 108-420, 16, 2004 U.S.C.C.A.N. 533, 547.

Defendant was not charged with violating § 1841. However, the passage of that statute is instructive in determining whether a pregnant woman can be charged with violating 18 U.S.C. § 1112 for conduct occurring *in utero* when the child is thereafter born alive.

Pursuant to 18 U.S.C. § 1841(c)(3), nothing in the Unborn Victims of Violence Act "shall be construed to permit the prosecution . . . of any woman with respect to her unborn child." The 2004 Act also exempts from prosecution any person conducting an abortion with the consent of the pregnant woman, § 1841(c)(1), and any person providing medical treatment to the pregnant woman or her unborn child, § 1841(c)(2). The legislative history of the § 1841(c) exemptions from prosecution sets forth that the exemptions in subsection (c) "would rectify the current injustice in Federal law by protecting a mother's constitutional right and interest in having a baby from unwanted intrusion by third parties." H.R. REP. 108-420, 4, 2004 U.S.C.C.A.N. 533, 534.

The Unborn Victims of Violence Act did not create a new federal crime in the general sense. The Act merely extended the reach of the current federal criminal statutes to protect a new class of victims. In doing so, the Act also created a class of persons who cannot be prosecuted under the federal criminal statutes for injury caused to an unborn child. The 2004 Act is a clear statement from Congress that the federal assault and murder statutes cannot be applied to the pregnant woman herself for any actions she takes with respect to her unborn child.

Congress is free to define or re-define the reach of the federal criminal statutes. Such statutes must be interpreted in the light most favorable to a criminal defendant. In the light most

favorable to Samantha Flute, the current state of the federal criminal law compels the conclusion that she cannot be prosecuted for the death of her child based upon injury that occurred *in utero*.

I find this result compelling in this case where the defendant is not accused of having committed any separate crime which caused the death of her child. For example, defendant is not alleged to have assaulted the child with a dangerous weapon. She is not alleged to have consumed an illegal substance. She is alleged to have taken legal substances, those prescribed by a medical doctor, which resulted in injury to her child *in utero* and resulted in the child's death shortly after birth. If defendant's actions amount to a federal crime, then by extension, pregnant women could be charged with assault if they consume alcohol during pregnancy. Pregnant women could be charged with assault or manslaughter if they negligently drive an automobile and cause an accident that results in injury or death to the unborn child. Pregnant women could be charged with assault or manslaughter if they use chemotherapy to treat cancer and thus cause injury or death to their unborn child. Women could be charged with neglecting appropriate pre-natal care. I decline to start down such a very slippery slope.

Absent express Congressional intent to extend the criminal law to this case or direction from the United States Court of Appeals for the Eighth Circuit or the United States Supreme Court, I decline to find that Samantha Flute is within the class of defendants that Congress intended to punish for injury to her unborn child which resulted in the child's death.

Accordingly,

IT IS ORDERED that the motion, Doc. 24, to dismiss the indictment is granted.

DATED this 14th day of November, 2017.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge